UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TORRANCE VERDIN<br>v.<br>LT. CHARLES CREEL;<br>VISITING (RCC) FEMALE OFFICER;<br>CAPTAIN KEENAN LETCHER;<br>LIEUTENANT SKYLAR FARRIS; and<br>STATE OF LOUISIANA THROUGH<br>LOUISIANA DEPARTMENT OF<br>PUBLIC SAFETY AND CORRECTIONS<br>ELAYN HUNT CORRECTIONAL CENTER | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION NO.: 25-658<br>JUDGE JOHN W. deGRAVELLES<br><br><br>MAGISTRATE JUDGE<br>RICHARD L. BOURGEOIS |

*******************************************************************************************

**AMENDED COMPLAINT FOR DAMAGES/USE OF FORCE**

Now into Court, through undersigned counsel, comes the plaintiff, TORRANCE VERDIN, who respectfully represents that he has sustained compensable damages from a use of force or by the acts and omissions of Defendant(s) herein, or for which Defendant(s) is/are legally responsible, as follows:

1.

**Jurisdiction**

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1441 and 1331 "Removal Federal Question" and accordingly plaintiff specifically seeks relief pursuant to the 28 USC § 1983 for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims.

2.

**Venue**

Venue is proper pursuant to 28 USC § 1391(b)(D(2) in that the Plaintiff and Defendants reside and are located in Elayn Hunt Correctional Center at the time of the incident and the events or omissions giving rise to the claims herein occurred at EHCC which is within this judicial district.

3.

**EXHAUSTION**

Exhaustion of administrative procedures are not necessary to bring tort claims and

the requirement for an inmate is unconstitutional. This claim is a tort claim. Pope v. State, 792 So. 2d 713 (La. 2001). Notwithstanding, all administrative procedure were initiated and appeal to 2nd step through EHCC 2024-658 on January 31, 2025.

4.

**PARTIES**

PLAINTIFF:

The named plaintiff is:

1) **TORRANCE VERDIN**, #771848, who is a major of full legal capacity currently, who is and was incarcerated at the ELAYN HUNT CORRECTIONAL CENTER (EHCC) during material times herein as a DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.

5.

DEFENDANT:

1) **LT. CHARLES CREEL**, (visiting from RCC) a major and resident of the State of Louisiana, and an employee of EHCC/RCC and/or the DOC, and who is sued individually, and who is amenable to service of process through Rhonda Weldon, Department of Public Safety and Corrections, 504 Mayflower Street, Baton Rouge, Louisiana 70802.

2) **FEMALE VISITING OFFICER (RCC)**, a major and resident of the State of Louisiana, and an employee of RCC and/or the DOC, and who is sued individually, and who is amenable to service of process through Rhonda Weldon, Department of Public Safety and Corrections, 504 Mayflower Street, Baton Rouge, Louisiana 70802.

3) **CAPTAIN KEENAN LETCHER**, a major and resident of the State of Louisiana, and an employee of EHCC and/or the DOC, who is sued individually, and who is amenable to service of process through Rhonda Weldon, Department of Public Safety and Corrections, 504 Mayflower Street, Baton Rouge, Louisiana 70802.

4) **LIEUTENANT SKYLAR FARRIS**, a major and resident of the State of Louisiana, and an employee of EHCC and/or the DOC, who is sued individually, and who is amenable to service of process through Rhonda Weldon, Department of Public Safety and Corrections, 504 Mayflower Street, Baton Rouge, Louisiana 70802.

5) **STATE OF LOUISIANA, through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS (DOC)**, pursuant to La. R.S. 36:401, a statutorily created and established body corporate having the power to sue and be sued, the domicile of which is the Parish of East Baton Rouge in the State of Louisiana, which is the governing authority over the ELAYN HUNT CORRECTIONAL CENTER (EHCC) amenable to service of process through the Department of Public Safety and Corrections, Secretary Gary E. Westcott, 504 Mayflower Street, Baton Rouge, Louisiana 70802 and the ATTORNEY GENERAL and the Department of Risk Management through the Honorable Liz Murrell 1885 N. 3rd Street, 3rd Floor Baton Rouge, Louisiana 70802, which is being sued on for vicarious liability on state law claim. A federal claim is not plead against the State.

6.

The incident occurred on September 21, 2024, on the EHCC property.

7.

In September 21, 2024, TORRANCE VERDIN was an inmate housed at EHCC in the Fox 3 C-Tier.

8.

On September 21, 2024, each Defendant officer was an employee of the Department of Corrections at Elayn Hunt Correctional Center and/or Rayburn Correctional Center, who was in the course and scope of his duties and acting under color of state law at all material times herein.

9.

On September 21, 2024, TORRANCE VERDIN was in Fox 3, C-Tier, when Lt. Creel

asked to see his tablet. In response, TORRANCE VERDIN ran out of the dorm on to D-2 and into the recreation yard where he quickly surrendered by laying on the ground with his hands over his head.

10.

When they had almost reached the D-2 yard, Lt. Charles Creel and the visiting lady officer jumped on TORRANCE VERDIN's back. Lt. Creel used his knee and lady took her feet and stood on TORRANCE VERDIN's neck and shoulder restricting the ability to breathe.

11.

None of the officers were wearing body cameras as is required by DOC regulations.

12.

Captain Letcher saw the inmate witnesses gathering around the D-2 Rec yard and started yelling, but it was too late and there were video cameras.

13.

LT. CHARLES CREEL then placed TORRANCE VERDIN in restraints and began escorting to the Beaver dorm with a group of other correctional officers including the female visiting officer, Captain Letcher, Lt. Creel and Lt. Farris, when Lt. Charles Creel began asked Capt. Letcher is there was a "blind spot" nearby.

14.

The reference to a blind spot is to a place where the cameras do not reach.

15.

TORRANCE VERDIN began to plead for his life and apologize profusely. He was told "shut the fuck Up," and "You must not love your life."

16.

While passing the D-2 gym, the demand from Creel for a blind spot became more aggressive.

17.

Capt. Letcher and Lt. Farris only laughed.

18.

After being walked through the Unit 2/3 gate, Creel, again, demanded a "blind spot."

19.

Once they reached the Unit 3 Canteen and Pill Call, Creel again said, "you must not love your life." Lt. Charles Creel then slammed TORRANCE VERDIN face first onto the concrete walk. Multiple officers began to surround TORRANCE VERDIN and beat him while he was not resisting and was in handcuffs.

20.

At that point, Lt. Farris, Capt Letcher, Lt Creel all joined in the fray and were yelling stop resisting even though there was no resistance. TORRANCE VERDIN was on the ground in full restraints and unable to flee or attack anyone. He posed no danger, while being beaten by ranking officers.

21.

Captain Letcher and other officers were twisting TORRANCE VERDIN's leg as though he was trying to break it at the joint. Lt. Farris jumped on top of TORRANCE VERDIN with his elbow pushed out hard on his neck and face yelling and cursing using racist words.

22.

They had TORRANCE VERDIN like he was hog tied and dragged him like a rag doll on the walk in full restraints behind his back.

23.

TORRANCE VERDIN was in extreme pain with his leg and shoulder and had difficulty placing any weight on his leg when they stopped lifting to escort him to Beaver 5. He was limping and crying.

24.

After the beating, the Defendants officers escorted TORRANCE VERDIN to Beaver 5 where he was forced to kneel in front of the key interlock. The officer was still looking for a blind spot.

25.

Once in the interlock cage in Beaver 5, TORRANCE VERDIN threw up his hands so he would not be beaten again or sprayed. Sgt. Singleton and Sgt. Barry began asking what happened. Initially, TORRANCE VERDIN was crying and said "nothing," because the other officers were still present.

26.

Sgt. Singleton and Sgt. Barry then got into a mild confrontation with other officers as to what they had done.

27.

Lt. Farris was heard saying, "That stupid nigger got what he asked for with his dumbass."

28.

When the other officers left, TORRANCE VERDIN told Sgt. Singleton and Sgt. Barry what had happened and they tried to send him to medical for over two (2) hours and wanted to give him an ice pack, but TORRANCE VERDIN was too scared the other officers would come back and, again, beat him.

29.

TORRANCE VERDIN was taken to the infirmary and taken from skilled nursing by Van to OLOL.

30.

TORRANCE VERDIN was transferred to OLOL and the video was viewed.

31.

He had injuries to his face, head, body, neck, back, a torn ligaments in his leg and damage to his shoulder. He is in pain when he sleeps in certain positions and the pain affects his leg, shoulder and body. He is fearful when he sees too many officers around him and beings to hyperventilate and experiences increased anxiety since the event.

32.

The video was pulled.

33.

Upon information and belief, there was an attempted cover-up, which resulted in the warden, Donny Bordelon, being escorted off the premise and either terminated or demoted.

34.

Later, while he was still suffering with his injuries and PTSD, TORRANCE VERDIN was pushed by Warden Luke Rheams to drop his ARP for $500.00. AW Coody also pressured him and frightened him that his refusal to drop the ARP would result in retaliation. This took place on 11.2024, in AW Coody office in Unite 3. This caused his PTSD and fear to escalate. He was extremely fearful of being beaten again.

35.

Fearful of retaliation, TORRANCE VERDIN was hesitant to submit sick calls for his injuries.

36.

There was an attempted cover up, which among others, upon information an belief, involved Warden Donnie Bordelon is alleged upon information and belief to have participated or allowed a cover up, for which he was then terminated. Others may also have been reprimanded or charged.

37.

The Defendant officers, each used his/her position as a correctional officer to coerce and forcibly assault the Plaintiff.

38.

Pursuant to La. R.S. 15:838 (A)(1) each offender has a right to be treated in a humane manner.

39.

In the alternative, this guard has similarly attacked other inmates.

40.

Beating an inmate who is in full restraints, on the ground surrounded by multiple officers and not resisting any order is per se unreasonable behavior. TORRANCE VERDIN was not written up for any offense save running out of the dorm.

41.

It was unreasonable for Defendant(s) to use force on Plaintiff when he was not resisting and when he was no longer resisting or attempting to flee or, otherwise, commit any crime.

42.

Use of force was unnecessary and excessive to any need and/or there was no need for use of force under the 8th Amendments and the circumstances presented.

43.

Whether there was other policy and practice in place at the EHCC pertaining to the use of force, which policy was violated and which caused or contributed to the injuries, is unknown at this time.

44.

The Defendant Officers acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

45.

Violating numerous inmates rights and failure to follow rules and regulations implemented for the protection of inmates constitutes deliberate indifference.

46.

The Constitution, statutes, rules and regulations enacted to protect inmates were disregarded.

47.

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, lac 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

48.

**INJURIES**

TORRANCE VERDIN suffered emotional shock, mental distress, PTSD and multiple injuries to his body including his leg, shoulder, neck, face, head, body with multiple scrapes and bruises.

49.

Photographs were taken of TORRANCE VERDIN's injuries. An investigation was performed. The videos were retained.

50.

The following claims for relief are pled collectively and in the alternative.

51.

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**

The DEFENDANT Officers committed a battery under state law. The touching was harmful and offensive, without consent or penological justification.

52.

Plaintiff seeks relief under La. C.C. arts. 2315 of the Louisiana Civil Code, which injuries were occasioned by the battery, intentional and/or negligent acts and/or omissions of the Defendant(s) herein.

53.

**SECOND CLAIM FOR RELIEF**
**RESPONDEAT SUPERIOR**

The State, as the employer of the Defendant Officers, is liable pursuant to respondeat superior for the tortious acts committed against third parties by its employees during the course and scope of employment and while under its control, direction and supervision pursuant to La. C.C. arts. 2317. There is no federal claim plead against the state. There is no claim that the State is vicariously liable for federal claims pled against the employee(s).

54.

**THIRD CLAIM FOR RELIEF**
**SECTION 1983 VIOLATION OF CIVIL RIGHTS**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

Under the color of State and local law, Defendant Officers - not the State - violated the Plaintiff's 8th Amendment right to be free from use of corporal punishment, unnecessary and/or excessive force while being seized and/or detained by the Defendants.

55.

Guards are prohibited by state law from using corporal punishment on prisoners. La. R.S. 15:829.

56.

Use of corporal punishment was prohibited and/or force was unnecessary and/or excessive to any need and/or there was no need for use of force under the 8th Amendment and the circumstances presented.

57.

The guards violated multiple state laws and rules and regulations.

58.

The conduct of the Defendant officers was extreme and outrageous.

59.

Defendant officers acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

60.

**FOURTH CLAIM FOR RELIEF COSTS AND ATTORNEY FEES**

Plaintiff seeks relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983.

Wherefore, Plaintiff prays that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiff against the Defendants with legal interest from the date of demand as follows:

a. Physical pain and suffering;

b. Physical injuries;

c. for emotional and mental distress, pain and suffering, humiliation, embarrassment and loss of employment opportunities;

d. Medical, hospital and pharmaceutical bills and services past, present, and future;

e. inconvenience;

f. Lost wages;

g. All litigation expenses; and

h. For attorneys fees and for costs as may be allowable by law

WHEREFORE Plaintiff prays that Defendants be cited to appear and answer; that plaintiffs be properly noticed of all hearings, orders, judgments, proceedings, and dates;

and that, after due proceedings herein, the defendant(s) be cast in judgment unto Plaintiff for damages, cost, interest from date of demand

Respectfully submitted:

s/ Donna U. Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997
Dgrodner@grodnerlaw.com

CERTIFICATE

I hereby certify that on December 4, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.

s/Donna U. Grodner
Donna U. Grodner (20840)